## COUPE *v.* ROYER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 53. Argued November 7, 1894. — Decided January 7, 1895.

In letters patent No. 77,920, granted to Herman Royer and Louis Royer, May 12, 1868, for " an improved machine for treating hides," the first claim, viz., for " a vertical shaft," and the second claim, viz., for a " grooved weight," are restricted to a shaft and crib in a vertical position, and to a weight operating by the force of gravity aided by pressure; and they cannot be extended so as to include shafts and cribs in a horizontal position, and pressure upon the hides by means of false heads, actuated and controlled by gearing wheels, springs, and a crank.

In jury trials in actions for the infringement of letters patent, it is the province of the court, when the defence denies that the invention used by the defendant is identical with that included in the plaintiff's patent, to define the patented invention, as indicated by the language of the claims; and it is the province of the jury to determine whether the invention so defined covers the art or article employed by the defendant.

The measure of recovery in a suit in equity for such infringement is the gains and profits made by the infringer, and such further damage as the

proof shows that the complainant sustained in addition to such gains and profits; but in an action at law the damages are measured only by the extent of the plaintiff's loss, as proved by the evidence, and, when the evidence discloses the existence of no license fee, no impairment of the plaintiff's market, no damages of any kind, the jury should be instructed, if they find for the plaintiff, to find nominal damages only.

THIS was an action of trespass on the case, brought in October, 1889, in the Circuit Court of the United States for the District of Massachusetts, by Herman and Louis Royer against William Coupe and Edwin A. Burgess for an alleged infringement of letters patent of the United States, No. 77,920, dated May 12, 1868, for an "improved machine for treating hides."

The patent expired on May 12, 1885, and this suit was entered July 14, 1885. The trial resulted, on November 10, 1886, in a verdict for the plaintiffs in the sum of $18,000, and judgment was entered, on November 26, 1889, for the sum of $21,288 damages and $164.25 costs.

The defendants below sued out a writ of error to this court.

*Mr. Wilmarth H. Thurston* and *Mr. Edmund Wetmore* for plaintiffs in error.

*Mr. M. A. Wheaton*, (with whom was *Mr. F. J. Kierce* on the brief,) for defendants in error.

MR. JUSTICE SHIRAS, after stating the case as above, delivered the opinion of the court.

The plaintiffs describe their invention as a new and improved machine for converting raw hides into leather, of that class which is used for belting, lacings, and other purposes where it is necessary to preserve the native strength and toughness without destroying or impairing the natural fibres or grain of the leather.

The machine is composed of a vertical slotted shaft provided with set-screws, which said shaft is capable of being revolved, by suitable mechanism, first in one direction and then in the other; a circularly-arranged set of pins or rollers set in rings or fixed heads, the same constituting a vertical

cylindrical cage or crib surrounding the vertical slotted shaft; and a weight adapted to be inserted within the crib or cage at its upper end, said weight being provided with a central aperture for the passage of the upper end of the vertical slotted shaft.

The specification, claims, and drawings appear at full length in the report of the case of *Royer* v. *Schultz Belting Company,* 135 U. S. 319, and need not be reproduced here.

The operation of the machine is described in the specification as follows: " The end of the raw hide to be softened is inserted in the slot of the vertical shaft and champed therein by the set-screws. The shaft is then revolved and the hide is wound tightly upon said shaft, forming a roll or coil thereon, and being held in this form by the surrounding cylindrical cage. After the hide has been thus wound upon the shaft, the shaft is revolved in the opposite direction, which has the effect to rewind or recoil the hide upon the shaft in a reverse direction, this reverse winding commencing at the inner end of the coil, the outer circumference of the coil being pressed against the pins or rollers of the surrounding cage. This winding and rewinding of the hide upon the shaft is repeated as many times as may be desired."

The function of the weight is twice described in the specification, as follows: " An iron weight or press is employed for crowding the coil of hide down *after it has received the forward and back action around the shaft,*" and " an iron weight, having an opening through its centre for the vertical shaft, and vertical grooves in it to prevent its turning, is placed upon the inside of the pins or rollers, and by pressing upon this weight, the hide is compressed edgewise, *after the forward and backward stretching or pressing is performed lengthwise.*"

One of the matters in dispute in the case is whether the weight is to operate during the winding and rewinding of the hides, or after the revolving of the shaft has ceased. The language of the specification, just cited, does not seem to describe the operation of the weight as cotemporaneous with the winding process, but as successive. Herman Royer, one of the patentees, testified that the weight is to operate while the cylindri-

cal shaft is revolving, and that its use is to regulate or confine the space in which the hides have to move forward and backward.

We are willing to assume, in our disposition of this case, the correctness of the plaintiffs' contention in this particular, and we shall also accept as indisputable the testimony of Herman Royer, that "the machine without the pressure would not effect such a motion and heat as are necessary to loosen the fibres of the hide. It would not work any effect. *The machine would be a failure without the weight.*"

It was further made to appear that, as early as 1863, Louis Royer, one of the patentees, had produced a machine for the purpose of treating hides, the characteristics of which were thus described in the testimony of Herman Royer: "The machine had a horizontal crib; it had a shaft central through its axis; it had bars circularly arranged around that central shaft; it had the same kind of motion to the right or left as the patented machine; it had everything that is in the present machine except the pressure weight." And on cross-examination the following questions and answers appear: "Now, when you and your brother came to the joint business of improving the machine you turned it from a horizontal position to a vertical position, did you not?" Answer. "Yes, sir." "And in that connection you used the weight so that the weight would press down by gravity upon the hides inside the crib; is that correct?" Answer. "The weight and pressure applied to the weight; yes, sir."

The plaintiffs also put in evidence a model of the defendants' machine, and testimony tending to show that defendants' machine consists of a horizontal shaft around which, when in operation, the hides are wound and unwound, of a horizontal crib or cage enclosing the shaft, and of two parts termed "false heads," connected together and adapted to be simultaneously moved toward or from each other, by means of right and left hand screws arranged one at each side of the crib, and engaging with traversing nuts connected with the false heads and with two gear-wheels which intermesh with a third gear-wheel mounted so as to turn loosely on the centre

shaft, said third gear-wheel being provided with a crank, so that by simply turning this crank gear-wheel in one direction or the other, the two false heads will be moved from or towards each other, and so as to diminish or increase the space for holding the coil of hides during the operation of the machine.

The defendants gave evidence tending to show that a machine made in conformity with plaintiffs' specifications and claims would not operate as a successful machine, to which the plaintiffs replied by evidence tending to show that a machine made after the description contained in the patent would and did operate successfully.

Upon the foregoing state of the evidence, the defendants requested the court to charge the jury as follows:

" That the plaintiffs' patent and the claims thereof on its face should be construed as requiring the presence, in the combinations required therein, of a vertical shaft and a correspondingly arranged vertical crib, and that, as it appeared from the evidence, and was undisputed that the machines complained of as used by the defendants were provided with horizontal shafts and horizontal cribs, the jury should return a verdict for the defendants.

" That if they should find as a fact that the substitution by the defendants of a horizontal shaft and a surrounding horizontal crib, in place of a vertical shaft and a surrounding vertical crib, and the substitution of two end-pressure plates, arranged to approach toward or recede from each other by a positive movement, under the control of the operator, in place of the single pressure weight described and shown in the plaintiffs' patent, produced an effect different in kind from the effect produced when a vertical crib and pressure weight is employed in the operation of fulling hides, then it would be their duty to find a verdict for the defendants.

" That a mechanical equivalent for a device shown in letters patent is a thing which performs the same result in substantially the same way, or by substantially the same mode of operation as the device described in the patent, and that if the jury should find from the evidence in the cause that under

this rule the pressure plates controlled as to their movements and as to the degree of pressure to be exerted by them, by right and left-hand screws, at the pleasure of the operator, were not the equivalents, in a horizontal hide-fulling machine, of the pressure weight in a vertical machine, then the jury ought to find a verdict that the defendants do not infringe the second claim of the plaintiffs' patent."

These requests the court answered as follows:

"You will come, however, gentlemen, to another and further consideration, which you must determine upon the testimony which is laid before you. In order to explain that, perhaps, I ought to preface by saying what you are to take this patent to mean; what it is, in brief terms, that it covers. In order that I may bring my observations within the technical requirements, what is the interpretation which you are to put upon this patent? This, gentlemen, is a patent, and the invention of the plaintiffs is an invention which is to be described as follows: It consists of a shaft which contains or has attached to it means by which hides can be fastened to its periphery. Around that shaft and leaving that shaft in the centre are arranged a number of bars which shall contain the roll of hides after it has been wrapped around the central shaft. In the third place there is a plunger or false head or contracting device, whatsoever you may call it—a piece of metal or of wood — which so moves as to reduce the space within which the hides are contained for the purpose of squeezing them sidewise. That is all there is in the machine, and any machine which contains these elements is an infringement of the plaintiffs' device and is a violation of law. I need not say to you that the defendants' machine is such a machine. It contains a central shaft and a device for fastening hides to it. It has other devices also for fastening other hides, but that constitutes no excuse for the use of the one single device for fastening hides. It has the bars surrounding the central shaft and which confine the hides after they are wound about that shaft. Those bars also have conveniences and means for adjusting them inwardly and outwardly. It also has a movable head, which operates to reduce the space in which the hides

are, or, in more popular phrase, to squeeze the hides together, and it also has another corresponding head on the other side, two instead of one.

"There is one difference as to which there is other testimony and to which I have not made reference. There is a difference in the position of the attitude of the machines. One of them is said to be vertical and one of them is said to be horizontal. One of them, as it might be said, stands upright and the other lies down on its side. Now, from that change which the defendant Coupe made, taking this" (the plaintiffs') "machine (for, as I say, we assume that he knew of the existence of it) and conceiving it to be an advantage to lay it down on its side, to make it horizontal instead of vertical, it followed that there must be a change made in the operation of the head or plunger which pressed the hides, because when it stood upright it would remain in its place by its own weight. If it was laid down on its side the weight would be likely to fall out of its place, and the weight of the plunger itself might be an inconvenience instead of a convenience in the operation. It was, therefore, necessary if this machine was to be changed into a horizontal machine, or if, to speak more accurately, the attitude of the mechanism was to be changed, it was necessary to make a different device for the purpose of compressing the hides. That is done in a very simple and ingenious way here by using a comparatively thin false head or plunger and moving it by a screw which moves it forward and back as may be required. Those two changes, therefore, go together, as it were — one is consequence of the other, and they form the most obvious difference to the eye between the two machines. Regarding that change this claim is made by the defendant: He claims that the change results in a radically different method of operation of the two machines. To state it in the language used in the patent law, he claims that there is a difference of function, which means simply that there is a difference in the manner and result of the operation of the two machines caused by laying one of them on its side. You are not to assume, gentlemen, that that is not possible. The change is slight in its general aspect. There is no change in

the structure of the machine — it is simply a change in the attitude of the machines in relation to the plane of the horizon. Nevertheless, you are to consider that changes smaller than that have sometimes resulted in very large differences in the method of operation. You must, therefore, with unprejudiced minds enter upon the consideration of the question, when you retire to your room, whether there be any difference in the operation of these two machines, the one standing vertical or erect, the other standing horizontal or lying upon its side.

"Now, what is the nature of the difference which the defendant claims? He claims that the difference is this: that the machine in a horizontal position will break the hides so that they can be used for useful purposes in the arts, and that the machine standing in a vertical position will not accomplish this work. To use his phrase, the phrase of the patent law, the machine is not operative; or, to use a phrase equally accurate and perhaps more easily comprehended, that this machine will not do the work which it is appointed to do. If that be so, gentlemen, there is not only a radical difference in operation, but there is evidently a defect in the original patent, so that if that claim made by him is true he has two defences, either one of which is a sufficient answer to this case — that is to say, while the machine described by the plaintiff as being a vertical machine will include horizontal machines also, and while it is true that a horizontal machine will infringe this patent for a vertical machine if it appears that the operation of the machine is substantially the same in the one position or the other; on the other hand, you will understand that if it appears that a horizontal machine will work and is operative, and that a vertical machine will not work and is not operative, then you must confine the plaintiff to that interpretation and meaning of his patent which confines him to vertical machines alone.

"It is not necessary for me to elaborate the legal principle contained in this. It would not interest you, and perhaps would tend rather to confuse than to elucidate what I have to say, and I therefore make one statement which, for practical purposes, for your purposes, covers the whole question.

If you find that a machine made with this shaft, crib, and weight, and standing so that the shaft is vertical — that is to say, is upright, will not break hides, will not do the work which it is expected to do — then, in that case, the defendant is entitled to your verdict. If you find that it will do that work, then the plaintiff is entitled to your verdict so far as this question is concerned. You are not to consider, gentlemen, which does it the best; you are not to choose between the two machines; you are not to consider whether one machine makes more trouble than the other, whether one makes work more uniform than the other and more desirable in the market, whether one is better able to perform the work, whether one does it with a less amount of power, whether it is easier in one to load or to unload than in the other, whether the machine is more under the control of the operator in one case than in the other, or whether the crib in one case is more adjustable than in the other. These considerations are of no consequence. To put it more shortly, the question to be determined by you is not which of these machines is the better machine, but simply and solely, will a machine made with a vertical shaft do the work at all? Now, as to that, you must consider the large amount of testimony that has gone in here."

The definition thus put upon the plaintiffs' patent was the following: " It consists of a shaft which contains or has attached to it means by which hides can be fastened to its periphery. Around that shaft and leaving that shaft in the centre are arranged a number of bars which shall contain the roll of hides after it has been wrapped around the central shaft. In the third place there is a plunger or false head, or contracting device, whatsoever you may call it — a piece of metal or of wood — which so moves as to reduce the space within which the hides are contained, for the purpose of squeezing them sidewise."

Having thus defined the plaintiffs' machine, the learned judge added: " That is all there is in the machine, and any machine which contains these elements is an infringement of the plaintiffs' device, and is a violation of law. I need not

say to you that the defendants' machine is such a machine."
This instruction must have been understood by the jury as
peremptorily directing a verdict for the plaintiffs, so far as the
question of infringement was concerned.

It may be thought that the action of the court below, in
instructing the jury that, upon the court's construction of the
patent and upon the undisputed character of the defendant's
machine, the plaintiffs were entitled to the verdict, was incon-
sistent with its subsequent action, in which the jury were told
that "while the machine described by the plaintiffs as being
a vertical machine will include horizontal machines also, and
while it is true that a horizontal machine will infringe the
patent for a vertical machine if it appears that the operation
of the machine is substantially the same in the one position or
the other, on the other hand, you will understand that if it
appears that a horizontal machine will work and is operative,
and that a vertical will not work and is not operative, then
you must confine the plaintiffs to that interpretation and
meaning of their patent which confine them to vertical ma-
chines alone. . . . If you find that a machine made with
this shaft, crib, and weight, and standing so that the shaft is
vertical — that is to say, is upright, will not break hides, will
not do the work which it is expected to do — then, in that case,
the defendant is entitled to your verdict. If you find that it
will do that work, then the plaintiff is entitled to your ver-
dict, so far as this question is concerned. . . . To put it
more shortly, the question to be determined by you is not
which of these machines is the better machine, but, simply
and solely, will a machine made with a vertical shaft do the
work at all."

But this apparent inconsistency in the two instructions will
disappear if we understand the latter to be based on the sug-
gestion that the plaintiffs' patent would be void if it were
without utility. A patented machine that will not do what it
is intended to do could not sustain an action against one who
was shown to use a successful and operative machine.

While we think that the learned judge was right in regard-
ing the case as one that depended on a construction of the

plaintiffs' patent and on undisputed evidence of the character of the defendants' machine, we yet think that he erred in his definition of the plaintiffs' patent, and in withdrawing the question of infringement from the jury.

The patent calls for, first, "a vertical rotary shaft, with means by which hides can be fastened to its periphery." The learned judge's reading is, "that the invention consists of a shaft with means by which hides can be fastened to it," omitting the term "vertical." The patent calls, in the second place, for "a vertical frame or crib, with vertical pins or rollers." The instruction given was "there are arranged a number of bars which shall contain the roll of hides after it has been wrapped around the central shaft;" again omitting the term "vertical" in connection with the crib, the bars, and the shaft. The plaintiffs' claim, thirdly, is for "an iron weight, having an opening through its centre for the vertical shaft, and vertical grooves in it to prevent its turning, which is placed upon the inside of the pins or rollers, and, by pressing upon this weight, the hide is compressed edgewise, after the forward and backward stretching or pressing is performed lengthwise." The definition given was: "In the third place, there is a plunger, or false head, or contracting device, whatsoever you may call it — a piece of metal or wood — which so moves as to reduce the space within which the hides are contained for the purpose of squeezing them sidewise." This definition again omits the reference to the shaft as a vertical one, and omits the grooves described in the patent as vertical, and erroneously describes what the patent calls "an iron weight" as "a plunger or false head or contracting device," terms not used in the patent, but terms that are used in describing defendants' machine. This part of the definition is also faulty because it describes the weight as "so moving as to reduce the space within which the hides are contained." There is nothing said in the plaintiffs' patent about the weight "moving" or "reducing the space in which the hides are contained," but such language is used to describe the operation of the false heads in the defendants' machine. The function attributed in the patent to this feature is evidently that of

pressure by weight, and not that of moving to and fro, so as to widen or narrow the path through which the hides are to pass.

The importance attributed in the patent to the position of the machine as a vertical one is seen in the fact that the term "vertical" is used no less than ten times, while in the definition of the patent given by the learned judge to the jury the word does not once appear.

That the iron weight and its function are important are shown by the testimony of Herman Royer, wherein he stated that the machine would be a failure without the weight.

The principle of construction which we think applicable to the plaintiffs' patent is that such construction must be in conformity with the self-imposed limitations which are contained in the claims. Such claims are the measure of their right to relief.

*Keystone Bridge Co.* v. *Phœnix Iron Co.*, 95 U. S. 274, 278, was a case where the manufacture of round bars, flattened and drilled at the eye, for use in the lower chords of iron bridges, was held not to be an infringement of a patent for an improvement in such bridges, where the specification described the patented invention as consisting in the use of wide and thin drilled eye bars applied on edge; and Mr. Justice Bradley, delivering the opinion of the court, said: "It is plain, therefore, that the defendant company, which does not make said bars at all, [that is, wide and thin bars,] but round and cylindrical bars, does not infringe this claim of the patent. When a claim is so explicit, the courts cannot alter or enlarge it. If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent and an application for a reissue. . . . But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office, or the appellate tribunal to which contested applications are referred. When the terms of a claim in a patent are clear and distinct, (as they should always be,) the patentee, in a suit brought upon the patent, is bound by it. . . . He can claim nothing beyond it."

So in *Burns* v. *Meyer*, 100 U. S. 671, 672, it was said: "The courts should be careful not to enlarge by construction the claims which the Patent Office has admitted, and which the patentee has acquiesced in, beyond the fair interpretation of its terms." And in *McClain* v. *Ortmayer*, 141 U. S. 419, 425, the principle we are considering was thus expressed: "It is true that, in a case of doubt, when the claim is fairly susceptible of two constructions, that one will be adopted which will preserve to the patentee his actual invention; but if the language of the specification and claim shows clearly what he desired to secure as a monopoly, nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention."

The patentees in the present case having, therefore, chosen to carefully restrict their claims for, the shaft and crib to such in a vertical position, and for the weight, to one operating by the force of gravity, aided by pressure, the question to be determined is, whether they can be permitted to extend their claims so as to include shafts and cribs in a horizontal position, and pressure upon the hides by means of false heads, actuated and controlled by gearing wheels, springs, and a crank.

Whether, in thus choosing to restrict themselves to a vertical machine, the patentees were influenced by their knowledge that the prior machine of Louis Royer, which was a horizontal one, had been a failure, or whether, what is more likely, the necessity of adopting the vertical position in order that the iron weight might operate by gravity and simple pressure, dispensing with other instrumentalities, controlled them, is matter of mere conjecture.

It remains only to consider whether the conclusion we have thus reached, and which renders a new trial necessary, should be given to the jury in the form of a peremptory instruction, or whether the question of infringement should be left to the jury to pass on as one of fact.

This court has had occasion, more than once, to reverse the trial courts for taking away from the jury the question of infringement, which they have sometimes done by rejecting

evidence of earlier patents offered to show anticipation, and sometimes by a peremptory instruction that a patent relied on by the defence was or was not infringement of the plaintiff's patent.

Thus in *Tucker* v. *Spalding*, 13 Wall. 453, 455, where an action at law was brought to recover damages for the infringement of a patent for the use of movable teeth in saws, and where the defendant offered in evidence, as covering the subject-matter of the plaintiff's patent, a patent prior in date and invention to that of plaintiff, the action of the court below in rejecting this offer of evidence because, in its judgment, the patent offered did not anticipate the one in suit, was held to be erroneous by this court, and Mr. Justice Miller, speaking for the court, used this language: "Whatever may be our personal opinions of the fitness of the jury as a tribunal to determine the diversity or identity in principle of two mechanical instruments, it cannot be questioned that when the plaintiff, in the exercise of the option which the law gives him, brings his suit in the law in preference to the equity side of the court, that question must be submitted to the jury, if there is so much resemblance as raises the question at all;" and reference was then made to the case of *Bischoff* v. *Wethered*, 9 Wall. 812, 814, as one in which the subject had been fully considered. In the case so referred to the subject was discussed at length, including a review of the English cases, and the conclusion reached was that, in a suit at law involving a question of priority of invention, counsel cannot require the court to compare the two specifications and to instruct the jury, as matter of law, whether the inventions therein described are or are not identical. In expressing the views of the court, Mr. Justice Bradley said: "A case may sometimes be so clear that the court may feel no need of an expert to explain the terms of art or the descriptions contained in the respective patents, and may, therefore, feel authorized to leave the question of identity to the jury, under such general instructions as the nature of the documents seems to require. And in such plain cases the court would probably feel authorized to set aside a verdict unsatisfactory

to itself, as against the weight of evidence. But in all such cases the question would still be treated as a question of fact for the jury, and not as a question of law for the court."

In the case of *Keyes* v. *Grant*, 118 U. S. 25, 36, where the defendant set up a prior publication of a machine anticipating the patented invention, and where there appeared obvious differences between the two machines in the arrangement and relation of the parts to each other, and where experts differed upon the question whether those differences were material to the result, and where the court below instructed the jury to return a verdict for the defendants, this court, reversing the judgment, said, through Mr. Justice Matthews: " Clearly it was not a matter of law that the specifications of the plaintiff's patent and the publication of Karsten, taken in connection with the drawings appended in illustration, described the same thing. . . . In our opinion this was a question of fact properly to be left for determination to the jury, under suitable instructions from the court upon the rules of law, which should guide them to their verdict."

And in the case of *Royer* v. *Schultz Belting Co.*, 135 U. S. 319, which arose upon an alleged infringement of the same patent here in suit, and where the question was chiefly to be determined by a comparison of two machines, this court held that the Circuit Court erred in not submitting to the jury the question of infringement under proper instruction.

The doctrine of the cases is aptly expressed by Robinson in his work on Patents, vol. 3, page 378, as follows: " Where the defence denies that the invention used by the defendant is identical with that included in the plaintiff's patent, the court defines the patented invention as indicated by the language of the claims; the jury judge whether the invention so defined covers the art or article employed by the defendant."

We perceive no error in the comments of the learned judge upon the question whether the plaintiffs' patent described a practically useful machine.

Our conclusion upon this part of the case, therefore, is, that the question of infringement, arising upon a comparison of the Royer patent and the machine used by the defendants, should

be submitted to the jury, with proper instructions as to the nature and scope of the plaintiffs' patent as hereinbefore defined, and as to the character of the defendants' machine.

Besides the differences in the character and operation of the two machines, arising out of their difference in position, and out of the distinctive methods of compressing the hides while undergoing treatment, there are other differences to which the attention of the jury should be called. Thus it is claimed by the defendants that with the slotted shaft of the patented machine the hides can be attached at most at only two points upon the periphery of the shaft, while in the defendants' machines the hides may be attached at numerous points about the periphery of the shaft. As a result of this difference, it is claimed that if a number of hides be attached to the shaft of the patented machine, they must overlie each other at the point of attachment, thereby causing a big bunch at the end; whereas it is claimed that in the defendants' machine, the points of attachment being distributed around the periphery of the shaft, there is instead a series of small bends, resulting in a much more nearly cylindrical coil.

So, too, it is claimed by the defendants that in the patented machine, with the elongated slot, if many hides are to be attached to the shaft, they must necessarily be distributed along the length of the shaft and near the ends thereof, and that, as a result, when the weight is pressed down it is liable to come in contact with the point of attachment of the upper hide and tear it away from its fastening, and this defect, it is claimed, is not found in defendants' machines.

It is true that these minor differences may not be relied on as, of themselves, taking the defendants' machine out of the reach of the plaintiffs' patent, but they are the subject of legitimate consideration by the jury, as part of the evidence upon which they must pass in determining the question of infringement.

Our attention is next directed, by the assignments of error, to the instructions given on the subject of damages. Of course, it will not be necessary for the jury to enter into this inquiry unless they find the question of infringement in favor

of the plaintiffs. But as, from the nature of a trial by jury, the court will be unable to anticipate the conclusion which the jury may reach on that question, explanations will have to be given to the jury as to the measure of damages applicable in such cases.

The evidence upon which the plaintiffs relied tended to show that the defendants had treated, upon their own machines, sixty-six thousand hides. They also called Herman Royer, one of the plaintiffs, who testified that in his opinion there would be a saving of $4 or $5 a hide by using his machine over what it would cost to soften hides by any other method, and that he knew that the difference between the cost of softening the rawhide by mechanical action in his machine and doing the same work by hand or by any other devices known would be more than one dollar a hide.

This was all the evidence offered on the subject by the plaintiffs. The defendant Coupe testified that there was no advantage in the use of the plaintiffs' mechanism, and that he would not take such a machine as a gift.

Upon this evidence the court instructed the jury as follows:

"The course taken by the plaintiffs to show the amount of damages is a proper course. They undertake to show the value of this invention to any person using it, and the law deems it a fair inference that whatever value has been received by the defendants through the use of this invention, so much has been taken from the plaintiffs, and they are entitled to have it restored to them. Upon the amount of those damages you have the testimony, if I remember right, of only one witness. Mr. Royer himself has made an estimation, as he states, of the amount of money which would be saved by the use of this particular mechanism for the performance of this particular operation in the course of the production of rawhide leather. . . . If you believe his testimony to be sound and in accordance with the truth, then you may make up your verdict on that basis, that being, I think, the only testimony in the case as to the amount of damages."

He subsequently added:

"My attention is called to the fact that there is other testi-

mony regarding the amount of damages besides that of Mr.
Royer. It is true, no doubt, that the defendant Coupe has
testified that there is no advantage in the use of this patented
mechanism; that it is not worth anything to him who uses it.
His testimony is that it is not worth anything to anybody,
and cannot be made to make leather, according to his under-
standing of it, according to his testimony. Of course, if that
be true, it not only reduces the damages to nothing, it is not
only conclusive that there should not be any damages at all,
but that there should be a verdict for the defendants. So,
that what I said before is strictly true, that, assuming that
there are to be any damages at all, assuming that the plain-
tiffs are entitled to a verdict, the only testimony upon the
subject of the amount of the verdict is that of Herman Royer."

We cannot approve of this instruction, which we think over-
looked the established law on the subject.

The topic is one upon which there has been some confusion
and perhaps some variance in the cases. But recent discussion
has cleared the subject up, and the true rules have become well
settled.

There is a difference between the measure of recovery in
equity and that applicable in an action at law. In equity, the
complainant is entitled to recover such gains and profits as
have been made by the infringer from the unlawful use of the
invention, and, since the act of July 8, 1870, in cases where
the injury sustained by the infringement is plainly greater
than the aggregate of what was made by the defendant, the
complainant is entitled to recover the damages he has sustained,
in addition to the profits received. At law the plaintiff is en-
titled to recover, as damages, compensation for the pecuniary
loss he has suffered from the infringement, without regard to
the question whether the defendant has gained or lost by his
unlawful acts — the measure of recovery in such cases being
not what the defendant has gained, but what plaintiff has
lost. As the case in hand is one at law, it is not necessary to
pursue the subject of the extent of the equitable remedy; but
reference may be had to *Tilghman* v. *Proctor*, 125 U. S. 137,
where the cases were elaborately considered and the rule above
stated was declared to be established.

But even in equity the profits which the complainant seeks to recover must be shown to have been actually received by the defendant. As was said in the case just referred to, "the infringer is liable for actual, not for possible gains. The profits, therefore, which he must account for are not those which he might reasonably have made, but those which he did make, by the use of the plaintiff's invention; or, in other words, the fruits of the advantage which he derived from the use of that invention, over what he would have had in using other means then open to the public and adéquate to enable him to obtain an equally beneficial result. If there was no such advantage in his use of the plaintiff's invention, there can be no decree for profits." And in *Keystone Manufacturing Co.* v. *Adams*, 151 U. S. 139, this court reversed the decree of the Circuit Court, because, in assessing the damages, that court based the amount on evidence showing, not what the defendant had made out of the invention, but what third persons had made out of the use of the invention.

It is evident, therefore, that the learned judge applied the wrong standard in instructing the jury that they should find what the defendants might be shown to have gained from the use of the patented invention. Nor, even if the defendants' gains were the measure of their liability, did the evidence justify the instruction, because that evidence tended to show what Royer estimated that the defendants' profits might have been, and not what they actually were.

Upon this state of facts, the evidence disclosing the existence of no license fee, no impairment of the plaintiffs' market, in short, no damages of any kind, we think the court should have instructed the jury, if they found for the plaintiffs at all, to find nominal damages only.

Error is alleged in the instruction of the court as to the duty of the plaintiffs, in order to lay a foundation for the recovery of damages, to give the notice required by section 4900 of the Revised Statutes.

It is claimed that the plaintiffs have neither alleged nor proved that the machines constructed under the patent have been marked as the statute requires; that hence the only

ground upon which they can recover damages is by proof of actual notice of infringement given to the defendants; and that the court erred in instructing the jury that no notice was necessary, and in thus taking away entirely the question whether any actual notice of infringement ever was given.

The plaintiffs contend that this point was not made at the trial; that it was not brought to the attention of the court by any proper request; and that the defendants should have set this matter up either by a plea or in a notice of special matter, so that the plaintiffs could have been prepared to meet the issue with evidence; and they cite *Rubber Co.* v. *Goodyear*, 9 Wall. 788, 801, and *Sessions* v. *Romadka*, 145 U. S. 29, 50, as holding that, in equity cases, notice of such ground of defence ought to appear in the answer, and that it is too late to raise such a question after the case has gone to a master for an account.

But in *Dunlap* v. *Schofield*, 152 U. S. 244, 247, also a case in equity, it was said: "The clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right, either to the whole public by marking his article 'patented,' or to the particular defendants by informing them of his patent and of their infringement of it. One of these two things, marking the article, or notice to the infringers, is made by the statute a prerequisite to the patentee's right to recover damages against them. Each is an affirmative fact, and is something to be done by him. Whether his patented articles have been duly marked or not is a matter peculiarly within his own knowledge; and if they are not duly marked the statute expressly puts upon him the burden of proving the notice to the infringers, before he can charge them in damages. By the elementary principles of pleading, therefore, the duty of alleging, and the burden of proving, either of these facts is upon the plaintiff."

As, then, in the present case, there was evidence in the form of interviews between Royer and Coupe, from which the plaintiffs sought to infer the fact of actual notice, and the defendants offered evidence tending to show that they had never

received any notice, either actual or constructive, of the Royer patent, or of any infringement thereof by them, we think the court ought to have submitted that question to the jury for their decision.

This view, however, is based on the assumption that the provisions of section 4900, Revised Statutes, are applicable to a case where the patentee has not sold any machine, nor licensed others to use his invention, but has chosen to enjoy his monopoly by a personal and sole use of the patented machine. In such a case, if the articles produced by the operation of the patented machine are not themselves claimed as new and patented articles of commerce, there may be a question whether the statute has any applicability. As, however, this cause has, for other reasons, to go back for another trial, and as this suggestion was not discussed in the briefs or at the hearing, we now express no opinion upon it.

*The judgment of the Circuit Court is reversed, and the record remanded with directions to set aside the verdict and award a new trial.*

MR. JUSTICE BROWN concurred in this opinion on the question of damages only.