## MONTGOMERY WARD & CO., Inc., v. GIBBS.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1928.

No. 2705.

1. Patents ⚡328—Patent No. 1,540,691, claim 16, for improvements in animal traps, held valid, and infringed by trap covered by patent No. 481,582.

Gibbs patent, No. 1,540,691, claim 16, for improvements in traps for capture of fur-bearing animals, *held* valid, and infringed by trap covered by Green patent, No. 481,582.

2. Patents ⚡185—Component, valuable and patentable part of whole patented article, is inventor's property.

A component part, in itself valuable and properly patentable, claimed as part of whole patented article, is the property of the inventor.

3. Patents ⚡328—Patent No. 1,540,691, for improvements in animal traps, held not void, as embodied in prior Gibbs patent, No. 1,458,286.

Gibbs patent, No. 1,540,691, claim 16, for improvements in traps for capture of fur-bearing animals, *held* not void for double patenting, as embodied in prior Gibbs patent, No. 1,458,-286, which was copending and described, but did not claim, similar trap.

4. Patents ⚡120—That two copending patents make identically same disclosure is immaterial, if same elements are not found in combination set forth in two claims.

That earlier and later of two copending patents make identically the same disclosure is immaterial, if the same elements are not found in combination set forth in the two claims.

5. Patents ⚡120—All features of patented article need not be claimed in first patent issued.

There is no law requiring that all features of a patented article must be claimed in the first patent issued.

6. Patents ⚡120—Disclosure of invention of second patent in earlier copending patent, not claiming it, is not fatal.

That invention of second patent is disclosed in earlier patent is not fatal, if it is not claimed therein and applications for both patents were copending.

7. Patents ⚡120—Issuance of first patent, not disclosing invention claimed in copending application for second patent, does not abandon unclaimed matter.

Where two applications for patents on separate inventions are copending, issuance of the first patent does not abandon unclaimed matter in its disclosure; pendency of second application rebutting such inference.

8. Patents ⚡226—Equity court, in patent infringement suit, considers very seriously lack of good faith, as in taking basic principles of employer's invention on returning to competing employer.

Lack of good faith, as in taking basic principles of employer's invention on leaving em-

ployment to return to competing employer, is an element which court of equity always considers with great seriousness in patent infringement suit.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Suit by Walter A. Gibbs against Montgomery Ward & Co., Incorporated. Decree for complainant (19 F.[2d] 613), and defendant appeals. Affirmed.

Charles H. Wilson, of New York City (Louis Marshall, of New York City, and John E. Cross, of Baltimore, Md., on the brief), for appellant.

Kennard N. Ware, of Philadelphia, Pa. (Howson & Howson, of New York City, John T. Tucker, of Baltimore, Md., and Charles H. Howson, of New York City, on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

NORTHCOTT, Circuit Judge: This is an appeal to review a decree entered in the District Court of the United States for the District of Maryland, which adjudged valid, and infringed by appellant, claim 16 of patent to W. A. Gibbs, appellee, No. 1,540,691, patented June 2, 1925, and issued on application filed November 12, 1920. The decree complained of was entered on July 1, 1927. The patent relates to improvements in traps designed for the capture of fur-bearing animals.

While appellant, Montgomery Ward & Co., Incorporated, who sold some of the traps in the city of Baltimore, were the nominal defendants below, the suit was in fact defended by the Triumph Trap Company, of Oneida, N. Y., manufacturers of traps. For convenience, the plaintiff appellee will be here designated as the plaintiff, and the defendant appellant as the defendant; manufacturers of the alleged infringing trap 'as the Trap Company.

Plaintiff owns a marsh in Maryland, where he traps muskrats for profit. He also manufactures traps on a commercial scale in his factory, at Chester, Pa. In pursuing the trapping of muskrats, plaintiff conceived the idea that the traps being used could be improved on. After experimentation, the trap, shown in the patent in suit, was evolved, and plaintiff took steps to patent his invention. In April, 1919, plaintiff took a model trap to Oneida, N. Y., where he exhibited it to officials of the Trap Company, and offered his trap to them, with a view to making a contract on a royalty or some similar basis. Among the officials interviewed by the plaintiff at this time was H. G. Green, at that time factory superintendent for the Trap Company. Failing to come to any agreement with the officials of the Trap Company, plaintiff decided to manufacture the traps himself, and in September, 1919, his traps appeared on the market. Since that time several millions have been sold by the plaintiff.

Plaintiff employed Green, and, with his assistance and advice, organized his factory at Chester. Green left the employ of the Trap Company on May 29, 1919, and went to Chester on or about June 1. Green remained with plaintiff until October 1, 1919, when he returned to the employ of the Trap Company, where he stayed for approximately a period of five years.

Plaintiff applied for a patent on the trap on November 12, 1920, and, with one unimportant exception, disclosed the same structure which he had exhibited to Green April 14, 1919. Green filed an application for patent, No. 481,582, on June 28, 1921, covering the trap subsequently manufactured by the Trap Company, and claimed here to be the infringing trap. The defendant sold the Green trap through its place of business in the city of Baltimore, and plaintiff brought suit, claiming infringement.

The judge below, in an able opinion, exhaustively discussed the numerous mechanical questions arising, and reached the conclusion that the plaintiff's patent was valid, and that the trap, sold by defendant and manufactured by the Trap Company, infringed the patent of the plaintiff, and entered a decree to that effect, from which decree this appeal was taken.

Two questions are raised on behalf of defendant: (1) That the plaintiff's patent is invalid; and (2) that the trap sold by the defendant did not infringe plaintiff's patent.

Four questions are raised as to the invalidity of plaintiff's patent, No. 1,540,691, which are as follows: First, that claim 16, the only claim of the patent held valid by the judge below, and, in view of the fact that there is no cross-appeal here, the only one necessary to be considered by us, is drawn to an inoperative device; second, that it is anticipated by prior art patents; third, that it is void for double patenting; and, fourth, claim 16 is void because, though appearing in a later issued patent, it expresses no different inventive thought or conception over the claimed invention of an earlier patent issued to the plaintiff. We will consider these

objections in the order in which they are named.

Claim 16 is as follows:

"In an animal trap, the combination with a pair of pivotally mounted jaws, a latch for maintaining the jaws in open relation, a treadle operatively associated with the latch and mounted between the jaws when the latter are open, a closing lever embracing the jaws and pivotally mounted at one side of the trap intermediate the jaw pivots and a spring adapted to actuate the lever to close the jaws."

[1, 2] This claim, while it is for a single-jawed trap, is inserted in the application for a double-jawed trap. It is contended on behalf of defendant that it would not operate as a single-jawed trap. That this contention was not sound was clearly demonstrated in the argument before this court. The single-jawed trap included in the double-jawed trap, and covered by claim, could be set and sprung independently of the second pair of jaws. In addition to this, it is proven that practically that part of the double-jawed trap, which is described by claim 16, could be manufactured, with unimportant changes, and sold as a single-jawed trap. This was done both by the plaintiff and the Trap Company. This point was not discussed by the judge below, probably because it was not urged there; but we can see no reason why a component part, in itself valuable, and properly patentable, claimed as a part of the whole, is not the property of the inventor.

The authorities relied upon on behalf of the defendant themselves lay down the principle that the invention must be shown to be worthless for the patent to fail. Bliss v. Brooklyn, Fed. Cas. No. 1546, 10 Blatchf. at page 521, and in Coupe et al. v. Royer et al., 155 U. S. 565, 15 S. Ct. 199, 39 L. Ed. 263, the court says that the question is: Will the machine do the work at all? It is clear in the present case that the trap will do the work. In Mastoras v. Hildreth (C. C. A.) 263 F. 571, the rule is laid down that a device need not be perfect to escape the charge of inoperativeness, and a full discussion of that point, citing a number of authorities, will be found in that case. We are of the opinion that the first ground of objection to the validity of the patent is not sound.

On the second ground, that claim 16 is anticipated by prior patents, the judge below in his opinion says:

"The defendant cites against claim 16 a number of patents, of which the most important are the Rasmussen patent, supra, and the Underwood patent, No. 834,539 of 1906. The closing lever of the Rasmussen trap is not mounted at one side, and hence it does not possess the important advantages of such a construction. The Underwood trap, on the other hand, while it does not claim a location of the pivotal mounting at one side of the trap, does show such a construction; but in this trap, the springs themselves are extended to embrace and actuate the jaws, and hence the advantages of an independent lever are lost. It consequently appears that one of the two important elements in claim 16 is suggested by the Rasmussen patent and the other by the Underwood patent. The question of invention depends upon whether it was patentable in the state of the art to combine these two elements together with the other elements of claim 16 to make the trap covered by the patent in suit. The Patent Office held that it was invention, and after careful consideration of the evidence and of the patents cited, it does not appear that the presumption of invention arising from the issuance of the patent has been overcome. The practical advantages of the new device, as compared with prior traps on the market, has been demonstrated. The adoption of substantially the same trap by the Triumph Trap Company is itself strong evidence of invention."

It seems clear that the plaintiff's patent was not anticipated by any single patent, and that all of its advantages were not anticipated by all the patents to be found upon search. Green, who constructed the alleged infringing trap, admitted that he knew of the Rasmussen, Boddis, and Underwood patents while endeavoring to construct a practical trap, which he was not able to do, until he saw the Gibbs trap in April, 1919. Evidently the element of invention did enter into Gibbs patent, and we are of the opinion that the second ground of objection to the validity of the patent is not good.

[3] As to the third objection that the patent is void for double patenting, based on the claim that the patent in suit was embodied in the prior Gibbs patent (No. 1,458,286), we find that these two patents, the prior Gibbs and the one in suit, were copending, and while a somewhat similar trap was described in patent No. 1,458,286, it was not there claimed as in claim 16, although described. On this point the judge below says:

"In the case at bar, on the contrary, claim 16 of the patent in suit was filed as an amendment on September 27, 1922, when the first patent was still pending. The first patent was not issued until June 12, 1923. The case at bar therefore falls squarely within the rule laid down in the cases involving the patents

of the Thomson-Houston Electric Company in the Second and Sixth circuits, also cited by the defendant. For instance, it is held in Thomson-Houston Electric Company v. Elmira & H. Ry. Co. [C. C. A.] 71 F. 396, 404, that an inventor, by describing an invention in a patent granted to him, does not necessarily preclude himself from patenting it subsequently, when the applications for both patents are pending together in the Patent Office. * * *

"Moreover, it seems that in the judgment of the Patent Office, the necessity for a divisional application existed when the application for the first Gibbs patent was pending. The drawings which accompanied the patent showed two differing constructions of the closing mechanism of the primary trap. The closing device in some of the drawings consisted of a tangential extension of the spring itself, while in others, a closing lever independent of the spring was shown. The Patent Office held that two sets of claims, each set covering a different closing device, could not stand together in the same patent, and that division was necessary. Claim 10 was placed by the Patent Office in that class of claims which covered a closing device consisting of an extension of the spring. After this ruling was made, the applicant no longer pressed the claims which described an independent closing lever, and did not file a divisional application. But the patent in suit having been subsequently applied for, claims 14, 15, and 16, showing an independent closing lever, were added thereto. Under the rulings of the Patent Office, claim 16 could not have been united with claim 10. It could only be filed in a divisional application or as was actually done in an independent patent. This procedure is within the rule of the cases cited.

"It is conceivable that a second patent covering subject-matter described but not claimed in a copending prior patent, may be so long delayed through the fault of the patentee that in the interval, rights may be acquired by other persons which the patentee will be estopped to deny. But there is no ground for an estoppel under the circumstances of this case since the defendant began to imitate the Gibbs trap long before the first Gibbs patent was issued. The defense of double patenting is without foundation."

[4] The case of Miller v. Eagle, 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, chiefly relied upon on behalf of defendant, on this point is easily distinguishable from the present case, because in that case the patents in comparison contained claims covering the

same combination of elements. The only difference being in the functions ascribed to one of the elements. Double patenting was held there because the combination of element was the same, which is not the case here. It is immaterial, that the earlier and later of two copending patents, make identically the same disclosure, if the same elements are not found in the combination set forth in the two claims under comparison. Thomson-Houston Electric Co. v. Black River Traction Co. (C. C. A.) 135 F. 759.

Claim 10 in the first Gibbs patent is for a combination of four elements, to wit: (a) The pivotally mounted jaws (1); (b) the spring having two separated helices (12b); (c) the shaft (13a); (d) bearings for the ends and middle of the shaft (apertures in the stationary jaw 22 for the ends and the block 20 in the middle).

Claim 16 of the later patent has the following five elements: (a) The pivotally mounted jaws (4, 4a); (b) a latch (10); (c) a treadle (11); (d) a closing lever (10); (e) a spring (18, 19).

Of the five elements in claim 16, only two of the elements of claim 10 appear. And the closing lever, which is the very essence of the combination of claim 16 of the patent in suit, is not an element of claim 10 of the earlier patent.

[5] There is no law requiring that all features must be claimed in the first patent issued. Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76; Century Co. v. Westinghouse (C. C. A.) 191 F. 350; Elec. Co. v. Brush Co. (C. C. A.) 52 F. 130; Thomson-Houston Co. v. Elmira (C. C. A.) 71 F. 396; Badische v. Klipstein (C. C.) 125 F. 543.

[6] It is not fatal if the invention of the second patent is disclosed in the earlier patent, provided it is not claimed there, and the applications for the two patents were copending. Traitel Co. v. Hungerford (C. C. A.) 22 F.(2d) 259. We agree with the judge below that the claim that the patent is void for double patenting is not well founded.

[7] The fourth objection to the validity of the patent is virtually disposed of by the holding as to the third objection. Counsel for defendant rely on Milburn Co. v. Davis, 270 U. S. 390, 46 S. Ct. 324, 76 L. Ed. 651, but in that case the two applications were by different inventors, and the case is not in point. Claim 16 of the later patent, although disclosed, was not claimed in the prior patent issued to Gibbs. Where two applications are copending, it is a matter of indifference which of the patents is issued first, provided the claims are for separate inventions. "The

issuance of the first patent does not abandon the unclaimed matter in its disclosure, the pendency of the second application rebutting any such inference." Traitel Co. v. Hungerford, supra.

In addition to these reasons given for sustaining validity of plaintiff's patent, we are also of the opinion that the weight necessarily given to the issuance of the patent by the Patent Office of the United States, coupled with the fact that the Gibbs patent has been well received, and commercially successful, all lead us to the conclusion that the patent is valid.

We now come to the second defense, that the trap manufactured by the Trap Company and sold by the defendant does not infringe the patent in suit. On this point the judge below says:

"Finally the defense is made, that the defendant's trap does not infringe the patent in suit, since it is said the closing lever is not pivotally mounted between the jaw pivots. The lever in the Gibbs trap is provided at the lower end with two lugs, each of which is provided with a hole through which the pivot pin passes at one of its ends. At its other end, the pivot pin is attached to the base of the trap. Thus the pin is held fast as an axis or pivot on which the lever turns when moved by the coiled spring encircling it. The lever in the defendant's trap is similarly provided with perforated lugs to which the pivot pin is made fast. The spring encircles and supports the pin. The defendant claims, therefore, that its lever is spring supported and is not pivotally mounted. The expression 'to pivot,' however, means 'to turn or swing on a pivot.' In the case of each trap, it is true that the lever is pivotally mounted. While the pin in the Gibbs trap is stationary, and the lever turns thereon, the pin in the defendant's trap turns with the lever itself, being supported by the coil spring as a bearing. In each case, the purpose is to hinge the lever arm, so as to permit it to swing freely, as distinguished from the riveted connection of the leaf spring secured to the base in the traps of the prior art. The mechanical equivalency of the two devices is clear, and infringement is established.

"Indeed, the defense of lack of infringement seems to be an after thought on the part of the defendant. In his application for a patent on the defendant's trap, Green refers in numerous places to the pin or rod as the pivotal support for the actuating lever, and to the coiled spring as forming a housing or bearing for the pivotal supporting member of the lever. Moreover, in the interference proceedings which originated at the instance of Green and defendant's attorney, after the institution of the case at bar, Green added claims 14, 15, and 16 of the patent in suit to his application as covering his trap, wherein as appears above, the closing lever is described as pivotally mounted. Under these circumstances, his testimony in the pending case that his trap is not pivotally mounted is not persuasive. Infringement is made out."

[8] We agree with this conclusion, and, in addition to the reason cited by the trial judge, the fact that witness Green, formerly superintendent for the Trap Company, which company is the real defendant in this case, was in the employ of the plaintiff, and left that employment to go back to the Trap Company, taking with him the basic and fundamental principles of the Gibbs invention, brings into the case an element of lack of good faith, an element which a court of equity always considers with great seriousness. We are of the opinion that the decree complained of should be affirmed.

Affirmed.