**LUNDBERG v. WELLES et al.**

United States District Court
S. D. New York.
Aug. 18, 1950.

Gustave B. Garfield, New York City, for plaintiff (Charles Trynin, New York City, of counsel).

Donovan, Leisure, Newton, Lumbard & Irvine, New York City, attorneys for defendants (Roy W. McDonald, George H. Bailey, Edward J. Speno, all of New York City, of counsel).

KNOX, Chief Judge.

Plaintiff here seeks damages from defendants in the sum of $250,000 for the latters' alleged infringement of the former's copyright of the book entitled "Imperial Hearst" in the production and distribution of a motion picture that was called "Citizen Kane". The action, originally begun on the equity side of the court, is now at law, and is to be tried before a jury.

In the course of plaintiff's pretrial examination of William H. Clark, treasurer of RKO, counsel for plaintiff propounded numerous questions to which the attorney for defendant took vigorous objections. These were upon the ground that Clark's knowledge of the details of transactions about which he was interrogated was insufficient to enable him to answer some of the inquiries that were put to him. The validity of these objections is now before me for decision.

The controversy centers upon the propriety of plaintiff's examination into the profits that are said to have accrued to defendant from the exhibition of "Citizen

Kane". The parties had agreed that certain schedules, prepared by defendant, of costs and receipts, would be accepted by plaintiff in lieu of production by RKO of its original books and records which had been demanded by a subpoena duces tecum of December 30, 1949. Defendant did not object, either to the subpoena, or to the notice of the taking of Clark's deposition, given the same day.

While Clark was under examination, plaintiff's attorney sought to question him as to the accuracy and propriety of the allocation of certain expense items contained in defendant's tabulations. The requested information comprehended a thorough knowledge of defendant's employment and cost records, and, as previously stated, objection was made by defense counsel that Clark was not personally familiar with these matters.

Further objection was made that plaintiff was imposing upon defendant the task of compiling information beyond the requirements of Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant's attorney tendered to plaintiff the inspection in California of all relevant books and records where these documents are located, and offered to produce RKO's comptroller for examination there. It was he, presumably, who exercised authority over the allocation of the production expenses of "Citizen Kane".

Plaintiff, on his behalf, seeks an order requiring defendant to produce in New York an employee having knowledge of the facts and all contracts, records, accounts, and vouchers that have to do with the subject matter of the litigation.

Inasmuch as plaintiff asks damages at law instead of an accounting in equity, defendant questions the relevancy and materiality of plaintiff's entire inquiry into the matter of profits. The confusion thus aroused as to what is the appropriate rule of recovery to be applied herein, in the event plaintiff shall prevail, may be somewhat allayed if the question now be decided. Such is one of the functions of the Pre-Trial Calendar Call whereon the instant motions came before me. See Rule 16, Federal Rules of Civil Procedure.

The theory by which profits may be recovered in a suit in equity emanates from antecedents that are wholly distinct from those which attend the recovery of damages in an action at law. The two are not only separable in principle, but also in the consequences flowing therefrom. Sammons v. Colonial Press, 1 Cir., 1942, 126 F.2d 341. Damages are measured by the loss to the plaintiff whose rights have been infringed; profits express the actual gains accruing to the defendant by virtue of his infringement. Coupe v. Royer, 1895, 155 U.S. 565, 582, 15 S.Ct. 199, 39 L.Ed. 263.

Traditionally, in an action at law for infringement, damages only can be recovered. However, inasmuch as infringements could be enjoined in equity, and in order to avoid a multiplicity of suits, the infringer was considered a trustee as to his profits for the benefit of the owner of the infringed work. Thus, an accounting of profits is an equitable remedy, and profits are computed upon a theory that differs from that governing damages. Root v. Railway Co., 1881, 105 U.S. 189, 207, 215, 26 L.Ed. 975; Burdell v. Denig, 1876, 92 U.S. 716, 720, 23 L.Ed. 764.

Clearly, as heretofore indicated, there is no necessary connection between the sums that may be recoverable under one or the other of the two theories. Under-exploitation by the infringer, or his bad business management, might place his profits far below the loss to the proprietor of the copyright. On the other hand, limitations upon the owner's facilities for successful exploitation of his property might not have permitted him to secure the profits which the infringer was able to obtain.

Although the development of the foregoing principles was largely the outgrowth of patent litigation, it has been generally considered that the Copyright Act assimilated the remedies in the copyright field to those of patents. See Sheldon v. Metro-Goldwyn Corp., 1940, 309 U.S. 390, 400, 60 S.Ct. 681, 84 L.Ed. 825; 17 U.S.C.A. §

362

101. But compare Sheldon v. Moredall Realty Corp., 2 Cir., 1938, 95 F.2d 48 and Metro-Goldwyn-Mayer Dist. Corp. v. Bijou Theater Co., D.C., 1931, 50 F.2d 908, modified on other grounds, 1 Cir., 1932, 59 F.2d 70, with Hutchinson Amusement Co. **v.** Vitaphone Corp., 93 F.2d 176, 1 Cir., 1937, Pathe Exchange v. Dalke, 4 Cir., 1931, 49 F.2d 161, and Atlantic Monthly Co. v. Post Pub. Co., D.C., 1928, 27 F.2d 556. Notwithstanding that the statute provides three remedies for infringement—injunction, damages, and profits—and makes no differentiation as to the nature of the action for each, no case has come to my attention in which an accounting of profits, as such, was considered to be actionable at law in the sense that there was a right to trial by jury. See, e. g., Tynan v. R.K.O. Radio Pictures, S.D.N.Y., 1947, 77 F.Supp. 238; Bruckman v. Hollzer, 9 Cir., 1946, 152 F.2d 730; Brown v. Lanyon, 8 Cir., 1906, 148 F. 838; cf. Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464.

Nevertheless, the issue is not foreclosed. While defendant need not account for profits in an action at law, it does not follow that an inquiry into profits will be wholly irrelevant to the assessment of damages. From an early date it is evident that in patent cases, the profits of an infringer, under certain circumstances, may be of aid in evaluating the plaintiff's loss. See Seymour v. McCormick, 1853, 16 How. 480, 489–490, 14 L.Ed. 1024; Burdell v. Denig, supra. Of course, in order to demonstrate the interrelation between the two items additional evidence would be required. Coupe v. Royer, supra.

The subject, perhaps, is best summarized in Royer v. Shultz Belting Co., E.D.Mo., 1891, 45 F. 51, 52, at pages 52–53, appeals dismissed, 1894, 154 U.S. 515, 14 S.Ct. 1152, 38 L.Ed. 1075, Id., 1895, 159 U.S. 264, 15 S.Ct. 1042, 40 L.Ed. 138: "In an action at law for infringement, it is true that evidence may be given of profits made by the defendant by the use of the patented device, * * * but such proof is merely a means to an end. Profits *eo nomine* are not recoverable in such action, and such proof is of no avail in estimating the damages, unless further evidence is

produced from which the court or jury can legitimately infer, that but for the infringement, the profits realized by the infringer, or some definite portion thereof, would have been realized by the patentee. In some instances the inference is readily drawn, especially in those cases where both parties are shown to have had equal facilities for manufacture, and the patented device is in itself a complete machine or compound, in all respects new, and the inventor has elected to realize on his invention by manufacturing and selling the patented machine or article; but in most other cases proof that a defendant has made large profits furnishes in itself no basis for a correct estimate of the injury sustained by the patentee. It does not follow that what the infringer has made, the patentee, as a proximate result of the infringement, has lost; and there is no presumption, either of law or fact, that the actual damage done to the patentee is commensurate with the gains of the infringer."

Consequently, where there is no established royalty, and no direct evidence of plaintiff's loss, the "reasonable royalty" rule presupposes an inquiry into defendant's gains. Dowagiac Mfg. Co. v. Minnesota Plow Co., 1915, 235 U.S. 641, 35 S.Ct. 221, 59 L.Ed. 398; United States Frumentum Co. v. Lauhoff, 6 Cir., 1914, 216 F. 610; Suffolk Co. v. Hayden, 1866, 3 Wall. 315, 70 U.S. 315, 18 L.Ed. 76. While the patent statute, 35 U.S.C.A. § 70; Binger v. Unger, S.D.N.Y., 1946, 7 F.R.D. 121, now expressly includes the "reasonable royalty" rule, it is a fact that even before the amendment, in Brewster v. Technicolor, Inc., S.D. N.Y., 1941, 2 F.R.D. 186, pretrial examination as to profits in an action at law for patent infringement was allowed. But see Swarthmore Junior, Inc., v. Miss Greeley Junior Frocks, Inc., S.D.N.Y., 1943, 52 F.Supp. 992.

However, one court has stated that the "reasonable royalty" rule is not in terms applicable to copyright litigation. Widenski v. Shapiro, Bernstein & Co., 1 Cir., 1945, 147 F.2d 909, 911. Therein, the "in lieu" clause of the copyright law, 17 U.S. C.A. § 101, was construed as its substitute. Pursuant to this provision, where actual

profits and damages have not been satisfactorily proved, the court, subject to certain other limitations, may award "such damages as to the court shall appear to be just". The implications of the Widenski decision may well lead to the conclusion that an infringer's profits are relevant only when profits, themselves, are to be recovered; and that only direct evidence of loss establishes damages.

If such be an accurate interpretation, the elements and criteria for determining damages to my mind will have been limited beyond the necessities of the statutory language. Accordingly, without a clearer expression to the contrary, I am not persuaded that, in no event, will profits be relevant to the issue of damages.

It must be observed, nevertheless, that under the alleged facts of this case, plaintiff's inquiry stretches relevancy to a tenuous degree. The defendant's profits, if such there be, were derived from the exhibition of a motion picture. Factors wholly unconnected with the value of plaintiff's story, if plagiarized, may have accounted for the picture's success. The apportionment of the contribution of the story, though an inexact appraisal, is not without precedent in an equity accounting. Sheldon v. Metro-Goldwyn Corp., supra; Universal Pictures Co. v. Harold Lloyd Corp., 9 Cir., 1947, 162 F.2d 354; Twentieth Century-Fox Film Corp. v. Stonesifer, 9 Cir., 1944, 140 F.2d 579. But that such an allocation is likely to reduce an already remote method of computing damages to a fruitless speculation, is a realistic anticipation.

■■ Accordingly, though I cannot deny plaintiff's right to pursue this inquiry, I shall not increase the burdens which already have fallen, and may yet further descend upon defendant in examination upon and meeting this issue. Defendant has previously supplied plaintiff with extensive data. From what has hereinbefore been said, and notwithstanding the propriety of a liberal application of the Federal Rules, I believe it would be needlessly oppressive were defendant compelled to transport voluminous records from California for inspection here. Niagara Duplicator Co. v.

Shackleford, 1947, 82 U.S.App.D.C. 45, 160 F.2d 25. The offer of examination that defendant has tendered appears in all respects fair, and plaintiff should have an opportunity to comply with it, but the motion for production and examination in the Southern District of New York will be denied.