## In re PERRIGO.
### Patent Appeal No. 2723.

Court of Customs and Patent Appeals. April 29, 1931.

T. A. Hostetler, of Washington, D. C., for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

The application in this case relates to "Method and Apparatus for Accumulating and Transforming Ether Electric Energy," and embraces 36 claims of which numbers 1, 15, 21, and 32 seem fairly representative:

"1. The production and generation of an electromotive force from the accumulation of the ether waves of an unknown potential, from the general field of ether wave electric medium."

"15. The method and apparatus herein described for collecting and accumulating from the general ether field of electric medium of unknown polarity, of ether waves of electromotive force, consisting in conducting the lines of force of the ether electric waves through aerials and within groups of broken circuits, and breaking up the lines of force, then reversing the polarity of these potentials through the medium of polarized resistances."

"21. A collector and accumulator of the ether electric waves, consisting of wave inductive aerial plates, and terminal contacts in opposite wave transmitting positions."

"32. An ether wave transformer of electromotive force, comprising an internal body of magnetic circuits, and an external body of increased magnetic intensity, to the internal body, and having an air gap between, insulated means connecting the internal and external bodies of magnetic circuits, and conductors connecting the poles of the internal and external magnetic circuits in progressive degrees of electric induction, and polarizing and depolarizing circuits connecting the conductors from the poles of the magnetic circuits in series, and series of polarizing and depolarizing circuits connecting said series of conductors in reverse order, and polarized resistance coils in the air gap insulated from the magnetic circuits and connecting electrically the series of reversed

polarizing and depolarizing circuit from the magnetic circuits."

There are no references, the claim having been rejected by the Board of Appeals of the United States Patent Office, who affirmed the decision of the Examiner, on the ground that the disclosed device is lacking in utility as a result of inoperativeness.

Appellant's structure is a very elaborate one, there being ten sheets of drawings. It would serve no good purpose to attempt a detailed description of it. There is a plate-like member carrying a quite complicated system of wiring, which is referred to as a "collector," and a structure, called a "transformer," which includes superimposed layers of conductors. There is also a rheostat and lead comprising a number of electric lamps.

The claims, as quoted, sufficiently indicate the purpose of the device.

Appellant has made several assignments of error, as, for example, that the Board erred in upholding the rejection by the Examiner on the ground (a) that the claimed invention "does not conform to any theory which is consistent with known natural laws relating to radiated energy, electro-statics, electro-dynamics or electro-magnetic phenomena"; (b) that it was implied that to support the application the discovery and development of "an entirely new world of unknown natural phenomena" would be an indispensable prerequisite; and (c) that it was implied that the same kind of development and public manifestations as characterized other fields of discovery (such as radio) was deemed to be an indispensable prerequisite.

These assignments of error are not well taken. Appellant's specification is long and complicated, and such explanation of operation as is given is expressed in language which, to us, as it appears to have been to the tribunals of the Patent Office, is not comprehensible, although the physical structure itself is capable of being understood. The specification does not conform to any scientific or engineering principles of which we have been able to obtain any knowledge. Should we reverse the experts and grant the patent sought, it would be a "leap in the dark," so far as this court is concerned, and we would be entirely unable to say what the patent is really for, or what measure of protection appellant is receiving. We have no way of ascertaining whether the device possesses utility or whether it will do the things claimed for it. There is nothing shown us from the realm of science by which to measure it.

is fundamental in patent law that an alleged invention, to be patentable, must be not only new but useful, and that it must appear capable of doing the things claimed in order to be a device of practical utility. Besser v. Merrilat Culvert Core Co. (C. C. A.) 243 F. 611; Coupe v. Royer, 155 U. S. 565, 574, 15 S. Ct. 199, 39 L. Ed. 263.

The rule of doubt may only be applied in favor of an applicant where the doubt is a reasonable one, that is, one founded in reason and engendered by testing the alleged invention by known scientific laws and principles. Ex parte DeBausset, 1888 C. D. 66.

Neither the Patent Office tribunals nor the courts may properly grant patents upon a mere possibility that a device might do the things claimed for it, and be useful. There must be definiteness. Neither the Constitution nor the statutes contemplate the granting of patents upon theories, nor giving a monopoly upon intellectual speculations embodied in devices incapable of scientific analysis.

The question of patentable invention ordinarily must be determined by applied science, as understood by those skilled in the art to which the invention relates, and, if one presents a device which cannot be tested by any known scientific principles, he must, at least, demonstrate its workability and utility and make clear the principles upon which it operates.

No such demonstration here appears from appellant's application, or otherwise. Three affidavits are presented of parties who claim to have seen appellant's device in operation and who vouch for its working. These affidavits, however, are brief, general in character, and give no description of the device which affiants saw. Nor do they give any explanation which contains anything tending to clarify the terminology of the specification, or to render the device measurable by engineering principles or known natural laws. One of the affiants states that he is "a member in good standing in the American Society of Electrical Engineers," but he does not attempt any scientific explanation of the device or its workings.

Appellant's fourth assignment of error is: "The Board of Appeals erred in ignoring the applicant's offers to demonstrate the operativeness of his invention and apparatus, and/or upholding the decision of the Examiner on the ground of applicant's failure to demonstrate his invention and apparatus." It is noted that this assignment attributes to

the *Board of Appeals* an "ignoring" of appellant's offer to demonstrate.

If it be meant by this that an offer was made to the Board of Appeals to make a demonstration of the device, it is sufficient to say that there is no disclosure in the record which even suggests that any such offer was ever made to that tribunal.

We do find that, while the matter was pending before the *Examiner*, and after his first rejection, an attorney for appellant, on April 25, 1927, addressed a letter to the Commissioner of Patents in which it was said: " * * * It is prayed that the Examiner point out more specifically the defects required to be corrected [in the specifications], and that an opportunity be afforded the applicant to demonstrate his invention, should such action be required by the Office."

There is, in another letter of the attorney to the Commissioner, dated October 31, 1927, a discussion of the affidavits above alluded to and a suggestion that a *prima facie* showing of facts had been made justifying a "more exhaustive *consideration* of the merits of his alleged invention, and particularly in view of his offer to further demonstrate the invention to the Office, if an opportunity be afforded him for that purpose," and the letter concludes with a prayer that " * * * final action be not rendered without affording applicant a full and fair opportunity to demonstrate his invention to the Office to the fullest extent within his power." (Italics ours.)

In the appeal to the Board there is no reference to the matter by assignment of error or otherwise, and the Board says: "No such demonstration has been offered."

In the absence of any stronger showing than the record contains of a bona fide earnest effort on appellant's part to secure a demonstration to or before the Patent Office tribunals, this court would not be justified in finding that the fourth assignment of error is good.

The decision of the Board of Appeals is affirmed.

Affirmed.