## HALL v. DUART SALES CO., Limited, et al.
### No. 15614.

District Court, N. D. Illinois, E. D.
July 6, 1939.

Chritton, Wiles, Davies, Hirschl & Dawson, of Chicago, Ill., for plaintiff.

Fisher, Clapp, Soans & Pond, of Chicago, Ill., for defendants.

HOLLY, District Judge.

Plaintiff who claims to be the owner of Patent No. 1,668,503 for a massage and cleansing cream containing milk, and a method of preparing the same, filed her complaint charging infringement of the patent and also that defendants had been guilty of unfair competition in advertising that a face cream prepared and sold by them was the only such cream containing milk. Defendants attack the validity of the patent, deny plaintiff's title to the patent and deny that plaintiff may maintain her action for unfair competition.

First. As to the validity of the patent. The only advantage that plaintiff claims for her face cream over other such creams

on the market is that it contains "sweet whole milk". She maintains that milk applied to the skin tends to whiten it, and on the witness stand cited the legend of Cleopatra's taking milk baths daily, which made her "the only white woman in a dark skinned race." But it is well known that milk does not have a whitening effect; that the story of Cleopatra and her milk baths is a pure myth.

Cow's milk is a compound composed (the proportions vary slightly) of about 87% water, 3.40% fat, 4.75% casein and albumen, 4% sugar and less than 1% ash. Casein has been used in face creams, as shown by the evidence, for many years. The only other constituent having any value, as the evidence shows, is the fat—butter—and it has no different effect from any other fat, except as women may believe that the use of ordinary animal fats may produce or cause the growth of hair. Many creams of different formulas have been on the market for years containing oils or fats of various kinds, differing in no important degree from butter. In fact, in plaintiff's cream the principal oily ingredient is almond oil, which constitutes 50% of the product. The proportion of milk is about 12¼%, and therefore the butter in the cream is but .425 per cent.

The Constitution provides that Congress shall have power "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S.C.A. Const. art. 1, § 8, cl. 8.

Congress has accordingly provided that "any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof * * not known or used by others in this country, before his invention or discovery thereof * * * obtain a patent therefor." U.S.C.A. Title 35, Sec. 31.

■ The cases are many that to be patentable the thing that is new must be "useful" as distinguished from frivolous. It must have value in satisfying some human desire. If plaintiff's addition of milk to a face cream did have actually the effect of whitening or otherwise beautifying the skin it would be a "useful" invention. But it does nothing. It makes the cream not a whit better either in purpose or in satisfying any aesthetic desire. To pass the cream off as having, by reason of the addition of milk, any effect other than any other cream, would be a fraud.

It has been urged that infringing the patent estops the defendant from setting up lack of utility as a defense. But I do not understand the law to be that the court is bound to sustain a patent when its lack of utility is plainly apparent from the evidence. I feel that I must hold that this patent is invalid for lack of utility.

Second. Is plaintiff entitled to relief on the ground of unfair competition. It is not controverted that defendant did, in the year 1936, in advertisements and radio broadcasts make statements that its product was the first and only facial cream containing milk, and that the statement was untrue. Plaintiff was then and had been for several years making and selling her cream which contained milk. The only question for this court's determination is whether plaintiff was injured as a result of these statements.

■ In American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 103 F. 281, page 285, 50 L.R.A. 609, the court (Taft, Lurton and Day, Judges) said: "* * * The private right of action in such cases is not based upon fraud or imposition upon the public, but is maintained solely for the protection of the property rights of complainant. It is true that in these cases it is an important factor that the public are deceived, but it is only where this deception induces the public to buy the goods as those of complainant that a private right of action arises."

■ That is but the statement of a fundamental principle of our jurisprudence that a private action to recover damages for a public wrong will lie only where the plaintiff has sustained injury differing in kind from that of the public generally. In that case complainant manufactured a wash board the rubbing face of which was made of aluminum. It had a monopoly on the use of aluminum for that purpose, advertised its wash boards as having aluminum rubbing faces, and had stamped the word "Aluminum" as a trade name upon its wash boards. In its complaint it charged that defendant was putting out a wash board the rubbing face of which was made of zinc, but which was branded as "aluminum"; that "being thus branded with the word aluminum, and so advertised, purchasers and users were induced to believe that the rubbing sheet is made of aluminum and induced to buy them from

that belief, so that when intending to purchase a genuine article, of which complainant was the sole manufacturer, they were led to purchase a fraudulent and falsely branded article of defendants manufacture". It was not averred that any one intending to purchase one of complainant's washboards was misled into buying a washboard of defendant's manufacture and the court in its opinion said (page 284): "* * we do not find it anywhere averred that the defendant, by means of its imitation of complainant's trade-mark, is palming off its goods on the public as and for the goods of complainant. The bill is not predicated upon that theory. It undertakes to make a case, not because the defendant is selling its goods as and for the goods of complainant, but because it is the manufacturer of a genuine aluminum board, and the defendant is deceiving the public by selling to it a board not made of aluminum, although falsely branded as such, being in fact a board made of zinc material; that is to say, the theory of the case seems to be that complainant, manufacturing a genuine aluminum board, has a right to enjoin others from branding any board 'Aluminum' not so in fact, although there is no attempt on the part of such wrongdoer to impose upon the public the belief that the goods thus manufactured are the goods of complainant."

This opinion was criticized by the judges of the Circuit Court of Appeals of the Second Circuit in Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.2d 603 (opinion by Judge Learned Hand), and possibly the courts now would not uphold the decision in that case, though the general principle there announced has not been questioned by the courts, so far as I have been able to discover. The Ely-Norris case, supra, was taken to the Supreme Court on certiorari, (273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578), the court taking the case on the ground that there was a conflict between the courts of the Second and Sixth Circuits. But in his opinion Justice Holmes who spoke for the court said the cases were not alike. In the Ely-Norris case the bill alleged that plaintiff had a patent on an explosion chamber in a door of a safe and had the exclusive right to make and sell safes containing such explosion chamber, and that no other safes containing such an explosion chamber were to be had in the United States before the defendant infringed plaintiff's patent (for which an infringement suit was pending); that de-

fendant was selling safes with a metal band around the door at substantially the same location as the explosion chamber of plaintiff's safes and had represented to the public that the band covered an explosion chamber by reason of which the public had been led to purchase defendant's said safes as and for safes containing an explosion chamber such as manufactured and sold by plaintiff; that sometimes defendant's safes had no explosion chamber under the band but were bought by those who wanted safes with an explosion chamber and so the defendant had deprived the plaintiff of sales, competed unfairly and damaged plaintiff's reputation.

It was noted by Justice Holmes in the opinion that "it is consistent with every allegation of the bill * * * that there are other safes with explosion chambers beside that for which the plaintiff has a patent" and he continued: "The defendant is charged only with representing that its safes had 'an' explosion chamber, which, so far as appears, it had a perfect right to do if the representation was true. If on the other hand the representation was false as it is alleged sometimes to have been, there is nothing to show that customers had they known the facts would have gone to the plaintiff rather than to other competitors in the market."

We have precisely the same situation here. We have neither allegation nor proof that there were not other face creams on the market containing milk. True plaintiff had a patent (which I have found to be invalid) for her cream, but the patent is for a particular combination and process. There may be on the market many other face creams containing milk in a different combination and made by a different process. For all that appears in the averments of the bill and the proofs, the customers who desired a face cream containing milk might have gone to others rather than plaintiff.

Plaintiff relies principally upon Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff et al., 2 Cir., 45 F.2d 94. In that case the court found that plaintiff had no exclusive right to the Dutch name Hopjes as applied to a confection but that the plaintiff had established its right to the secondary meaning of "Rademakers Hopjes"; that Frank Rademaker who had been making hopjes and sending them to defendant in America as his American Agent

might use his own name and market his wares under the name of "Frank Rademaker's Hopjes", provided he made it clear that they were his own and not plaintiff's product and that he might not use the words "sole genuine". That case is quite unlike the case at bar. So also are Chickering v. Chickering & Sons, 7 Cir., 215 F. 490, and Bayer Co. v. United Drug Co., D.C., 272 F. 505.

Under the pleadings and the evidence I must hold that plaintiff cannot sustain her action for unfair competition.

An order dismissing the complaint will be entered on June 16, 1939, at ten o'clock A. M.