28 C.C.P.A.(Patents)

## In re OBERWEGER.
## Patent Appeal No. 4386.

Court of Customs and Patent Appeals.

Dec. 9, 1940.

Sol Shappirio, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Appellant has here appealed from the decision of the Board of Appeals of the United States Patent Office, which affirmed, in respects hereinafter specifically pointed out, the decision of the Primary Examiner, rejecting certain claims relating to an alleged invention for a composition, and method of using the same, in treating the scalp for the purpose of producing hair growth.

The claims of the application are twelve in number. Claims 1, 2, 3, 5 and 12 are regarded as illustrative and read:

"1. The method of treating the scalp which comprises applying thereto a composition prepared from marrow, clover oil, and alcohol in amount sufficient to act as a vehicle for the other components.

"2. The method of treating the scalp which comprises cleaning the scalp, and then applying thereto a composition prepared from marrow and a penetrating volatile organic vehicle including alcohol.

"3. The method of treating the scalp which comprises cleaning the scalp with a composition prepared from glycerine and an infusion of brennessel herb, Rosemary needles, China bark, orange shells and lavender.

"5. A composition for treating the scalp comprising marrow and clover oil carried in a penetrating volatile organic vehicle including alcohol.

"12. The method of making a composition for treating the scalp, which consists in melting marrow, removing residual waste matter, adding clover oil and alcohol in substantial amount to said molten marrow, intimately admixing the components, and cooling the mixture to a composition of petrolatum consistency."

■ The examiner required division between claims 1, 5, 7, 10, 11 and 12, which relate to treating the scalp, and claims 3, 6, 8, and 9, which relate to cleaning the scalp. This requirement of division was upheld by the Board of Appeals.

It seems clear that claims 3, 6, 8 and 9, which relate to cleaning the scalp and not to the method of treating it for the purpose of growing hair, attempt to cover a subject matter so unrelated to that of the other claims of the application that the division required by the tribunals below was proper.

After division was required, applicant elected to restrict her case, in event division was upheld, to claims 1, 2, 4, 5, 7, 10, 11 and 12. Claims 3, 6, 8 and 9 are not before us on their merits and are not so covered in the reasons of appeal.

■ Claims 2 and 4 cover cleaning the scalp with a certain preparation and then applying the alleged hair-stimulating composition. These claims were rejected as being aggregative. The tribunals below held that there was no necessary relation between the step of cleaning the scalp and the step of applying to the scalp a specific composition. We are in agreement with this ground of rejection on the part of the

Board of Appeals since it is clear to us that the two steps have no patentable relationship.

Claims 1, 2, 4, 5, 7, 10, 11 and 12, were rejected by the examiner upon the prior art. In view of our conclusion, it is not necessary to here set out the cited prior art or to further refer to it.

The examiner also rejected all the claims on the ground that the alleged invention lacked utility. The decision of the Board of Appeals in some respects is not very clear as to what it intended to hold. It did hold definitely that claims 2 and 4 were aggregative; that claims 1, 5, 7, 10, 11 and 12 were not regarded as anticipated by the prior art cited, and that claims 7 and 12 were not obvious methods of preparing the composition of claim 5. It held that claims 3, 6, 8 and 9 did not cover an obvious method "to make the infusions claimed in view of the art cited," and in part it said:

"The examiner has also rejected all of the claims on the ground of lack of utility since compositions for growing hair on the human scalp have uniformly proven unreliable. We agree that the affidavits and letters of record are not convincing as to the utility of the subject matter of claims 1, 2, 4, 5, 7, 10, 11 and 12 to which applicant has elected to restrict this case if the requirement for division is upheld.

"Claims 3, 6, 8 and 9 are for or related to cleaning compositions and we believe that no convincing proof should be required that they will operate effectively as cleaning compositions.

"The decision of the examiner rejecting claims 1 to 12 is affirmed as is also his requirement for division between claims 1, 5, 7 and 10 to 12 and claims 3, 6, 8 and 9."

As we understand this decision, the board agreed with the examiner that the claims before us on their merits defined subject matter which was lacking in patentable utility.

Appellant points out in her specification that: "A wide variety of compositions and methods have been suggested in the prior art for use on the human scalp for promoting the growth of hair, but it is noteworthy that little of a successful nature has been developed in that connection."

The preparation at bar is made wholly from animal and vegetable products. The main ingredient is the fusible portion of marrow, preferably that which is obtained

from the bones of the cow. With this is mixed clover oil and alcohol. The specification teaches cleaning the scalp, before applying the composition. This is done with an infusion, the composition of which is set out in some of the claims, such as claim 3. The specification also refers to a desired temperature of the scalp when the marrow preparation is applied. Other steps of the treatment are mentioned in the specification but are not set out in any claim submitted. Testimonials (found in the record) relating to the efficacy of the treatment, refer to the use of a "Sunray lamp."

On the question of utility, appellant has filed in the Patent Office her affidavit and the affidavit of one S. W. Rock, who states that he is a New York doctor of medicine. The applicant in her affidavit states, among other things, that unique results are obtained from the use of the clover oil; that the composition "materially aids in stimulating a healthy scalp condition resulting in hair growth," and that the use of her preparation was "with very effective and satisfactory results." The affidavit seems to stress the effectiveness of the use of clover oil. Little is said in the affidavit concerning the other ingredients in the composition or that there is any new and useful result flowing from the composition, differing from that resulting from the use of clover oil.

Affiant Rock, in a very short affidavit, states that he had observed the results flowing from the use of applicant's composition and "that by such observation he affirms that the product is meritorius [sic] and effective in scalp treatment, resulting in the production of a healthy condition of the scalp that in many cases has given rise to an improved condition under which the growth of hair is stimulated."

It was the view of the tribunals below that the affidavits were weak in character and were not sufficient to show utility for a concoction which belongs to a class of compositions which from common knowledge has long been the subject matter of much humbuggery and fraud.

The Constitution authorizes Congress to promote the progress of science and the useful arts by authorizing the issuance of patents. The patent statute which Congress enacted, 35 U.S.C.A. § 31, in part reads: "Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof * * * not known or used by others in this country, before his invention or discovery thereof * * * may * * obtain a patent therefor."

It has been held that a small degree of utility is sufficient to support a patent. Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. et al., 6 Cir., 120 F. 267. See, also, In re Holmes, 63 F.2d 644, 20 C.C.P.A., Patents, 902. In Walker on Patents, Deller's Edition, Vol. 1, § 64, is found the following: "To possess utility, an invention must be capable of producing a result, and that result must be a good result capable of being so applied in practical affairs as to prove advantageous in the ordinary pursuits of life. * * *"

In Hall v. Duart Sales Co., Ltd., et al., 28 F.Supp. 838, where the validity of a patent covering face cream containing "sweet whole milk" and recommended for whitening the skin, was under consideration, the District Court for the Northern District of Illinois regarded the claim there under consideration as covering fraudulent subject matter and pointed out that for the subject matter of a patent to have utility it must be useful as distinguished from frivolous.

This court has on a few occasions passed on the question of utility of alleged inventions. In Re Perrigo, 48 F. 2d 965, 18 C.C.P.A., Patents, 1323, the patent application related to an electromotive force being generated "from the accumulation of the ether waves of an unknown potential, from the general field of ether wave electric medium." The tribunals of the Patent Office rejected the claims on the ground that the described method and apparatus lacked utility. We there said:

"It is fundamental in patent law that an alleged invention, to be patentable, must be not only new but useful, and that it must appear capable of doing the things claimed in order to be a device of practical utility. Besser v. Merrilat Culvert Core Co. [8 Cir.], 243 F. 611; Coupe v. Royer, 155 U.S. 565, 574, 15 S.Ct. 199, 39 L.Ed. 263.

"The rule of doubt may only be applied in favor of an applicant where the doubt is a reasonable one, that is, one founded in reason and engendered by testing the alleged invention by known scientific laws and principles. Ex parte DeBausset, 1888 C.D. 66.

"Neither the Patent Office tribunals nor the courts may properly grant patents upon a mere possibility that a device might do the things claimed for it, and be useful. There must be definiteness. Neither the Constitution nor the statutes contemplate the granting of patents·upon theories, nor giving a monopoly upon intellectual speculations embodied in devices incapable of scientific analysis.

"The question of patentable invention ordinarily must be determined by applied science, as understood by those skilled in the art to which the invention relates, and, if one presents a device which cannot be tested by any known scientific principles, he must, at least, demonstrate its workability and utility and make clear the princi-·ples upon which it operates."

Affidavits were presented in that case. Concerning them we said: "Three affidavits are presented of parties who claim to have seen appellant's device in operation and who vouch for its working. These affidavits, however, are brief, general in character, and give no description of the device which affiants saw. Nor do they give any explanation which contains anything tending to clarify the terminology of the specification or to render the device measurable by engineering principles or known natural laws. * * *"

Very much like the situation at bar, the affidavits in that case did not afford convincing proof of utility. Certainly there is nothing in this record to show that appellant's composition is any better than the many hundreds of similar concoctions that have been advertised and sold to a credulous public since the beginning of recorded history. It is a matter of common knowledge that numerous preparations, similar in many respects to the one at bar, have been advertised and sold for the purpose of producing hair on bald heads and which were totally lacking in utility, often harmful to the human body, and whose sale was generally understood to be a fraud upon the public.

Having in mind the particular subject matter involved in the instant alleged invention, we are in full agreement with the tribunals of the Patent Office that the claims which are before us on their merits were properly rejected for lack of patentable utility and that the board committed no error in affirming the action of the examiner requiring division of the claims as aforesaid.

The decision of the Board of Appeals, rejecting claims 1, 2, 4, 5, 7, 10, 11 and 12 on the ground of lack of utility, is affirmed, and the requirement for division is upheld.

Affirmed.